UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
NIIT (USA), INC.                                            :

                     Plaintiff,   :   Civil Action No. 08 cv 03327 (JES)

      Versus

CENGAGE LEARNING, INC. f/k/a                    :   **DEFENDANT CENGAGE LEARNING, INC.'S ANSWER TO PLAINTIFF'S COMPLAINT AND COUNTERCLAIMS AGAINST PLAINTIFF**
THOMSON LEARNING, INC.,

                     Defendant.   :

------------------------------------------------------------ X

      Defendant, Cengage Learning, Inc. ("Cengage" or "Defendant"), by and through its attorneys, Satterlee Stephens Burke & Burke LLP, respectfully answers plaintiff's Complaint and counterclaims against plaintiff, upon information and belief, as follows:

<u>The Parties, Jurisdiction and Venue</u>

      1.     Cengage admits the allegations contained in Paragraph 1 of the Complaint.

      2.     Cengage admits the allegations contained in Paragraph 2 of the Complaint.

      3.     Cengage admits that it was formerly known as Thomson Learning, Inc. and avers that the name change occurred in or around July 2007.  Cengage admits that it was sold to third parties in or around May 2007.  Cengage denies the remaining allegations contained in paragraph 3 of the Complaint.

      4.     Cengage admits the allegations contained in Paragraph 4 of the Complaint.

      5.     Cengage admits the allegations contained in Paragraph 5 of the Complaint.

<u>Background Facts</u>

      6.     Cengage repeats the responses set forth above to the allegations in Paragraph Nos. 1 through 5, as if fully set forth herein.

7. Cengage denies knowledge or information sufficient to form a belief of the allegations contained in Paragraph 7 of the Complaint and therefore, those allegations are denied.

8. Cengage admits that NIIT and Cengage entered into a Master Services Agreement dated March, 23, 2006 ("MSA") that provided that NIIT would perform certain services described in Statements of Work executed by the parties and attached to the MSA and incorporated therein. Cengage admits that a copy of the MSA is attached as Exhibit A to the Complaint, but avers that the MSA is missing a statement of work attachment and therefore does not appear to be a true and correct copy of the complete document.

9. Cengage denies the allegations contained in Paragraph 9 of the Complaint except admits that NIIT and Cengage executed a Statement of Work dated on or around July 26, 2006 ("SOW"). Cengage admits that the SOW contained a project deliverable called "Project Expedition." Cengage denies the remaining allegations contained in Paragraph 9 of the Complaint and avers that the document attached to the Complaint at Exhibit B is not a true and correct complete copy of the SOW.

10. Cengage admits that a portion of paragraph 2(B) of the MSA provides that Cengage could give written notice via email or other means that it had accepted a specific deliverable under a statement of work and affirmatively avers that, under the SOW, any such written notice needed to be signed by both the TL Technical Lead and QA Director. For a complete and accurate understanding of the contracts, Cengage respectfully refers the Court to the MSA and SOW.

11. Cengage admits that a portion of paragraph 7(g) of the MSA provides that "[u]pon expiration or termination of [the MSA] for any reason," Cengage shall pay consultant

734938_1

for any Services performed in accordance with the terms hereunder or for any Work Product that it elects to accept." Cengage denies the remaining allegations contained in Paragraph 11 of the Complaint. Cengage respectfully refers the Court to the MSA and SOW.

12. Cengage admits that a portion of paragraph 4(a) of the MSA provides that Cengage agreed to pay NIIT in accordance with the fee structure in the applicable Statement of Work. For a complete and accurate understanding of the contracts, Cengage respectfully refers the Court to the MSA and SOW.

13. Cengage admits that a portion of paragraph 4 of the SOW provided that "[t]he cost for this project will not exceed $735,000" and "[a]ll Services will be billed on a time and materials basis at the rate of $20 per hour worked, not to exceed $735,000 in total." Cengage denies the remaining allegation contained in Paragraph 12 of the Complaint. For a complete and accurate understanding of the contracts, Cengage respectfully refers the Court to the SOW.

14. Cengage admits that the SOW provided that Cengage "must authorize any expenses in addition to labor cost in writing. Cengage denies the remaining allegations contained in Paragraph 14 of the Complaint.

15. Cengage admits that Exhibit C to the Complaint appears to be an invoice dated September 30, 2006 in the amount of $167,280.00. Cengage has insufficient information to admit or deny the remaining allegations in Paragraph No. 15 and, therefore, the allegations are denied.

16. Cengage admits that Exhibit D to the Complaint appears to be an invoice dated October 1, 2006 in the amount of $27,000.00 for a server. Cengage has insufficient

information to admit or deny the remaining allegations in Paragraph No. 16 and, therefore, the allegations are denied.

17. Cengage admits that it approved the purchase of the server license on June 14, 2006 as a reimbursable expense. Cengage denies the remaining allegations in Paragraph No. 17.

18. Cengage admits that Exhibit F is an invoice dated October 31, 2006 for purported offshore work performed. Cengage denies the remaining allegations in Paragraph No. 18.

19. Cengage admits that a communication dated November 21, 2006 purports to confirm that certain deliverables due under the SOW had been accepted, but affirmatively avers that Kathy Dugas, the author of the email, was not authorized under the SOW to approve the deliverables, further avers that the email only refers to a portion of the work under the SOW, and further avers that the work allegedly performed was untimely and therefore, unacceptable and a material breach of the MSA under the MSA and the SOW. Cengage denies the remaining allegations in Paragraph No. 19.

20. Cengage admits that it has not paid NIIT on Invoice Nos. 1, 2, and 3. Cengage denies the remaining allegations contained in Paragraph 20.

21. Cengage denies the allegations contained in Paragraph 21 of the Complaint.

## Breach of Contract

22. Cengage repeats the responses set forth above to the allegations in Paragraph Nos. 1 through 21, as if fully set forth herein.

23. Cengage denies the allegations contained in Paragraph 23 of the Complaint.

24. Cengage denies the allegations contained in Paragraph 24 of the Complaint.

25. Cengage denies the allegations contained in Paragraph 25 of the Complaint.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

26. Plaintiff fails to state a claim for which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

27. Plaintiff's claims in this action are barred by the express terms of the MSA and SOW because the deliverables for which plaintiff seeks to recover were not timely delivered and plaintiff was in material breach of the MSA. Further, the deliverables were not approved by the appropriate persons in accordance with the express terms contained in the SOW.

### THIRD AFFIRMATIVE DEFENSE

28. Plaintiff is estopped from recovering under the MSA and SOW because it materially breached those contracts by failing to deliver the deliverables in a timely fashion in accordance with the express terms contained in the Statement of Work. Plaintiff is also estopped from recovering under the MSA and SOW because it did not complete all of the work required under the SOW entitling it to the maximum payable amount under the SOW, i.e. $735,000. Indeed, despite receiving approximately 60% of the total fixed price under the contract, i.e. plaintiff has already received approximately $470,000, plaintiff only completed approximately

734938_1

40% of the work and seeks in the Complaint the maximum amount recoverable without completing the required work.

## FOURTH AFFIRMATIVE DEFENSE

29.     Plaintiff is barred from seeking the relief requested in the complaint under the doctrine of unclean hands because plaintiff breached the MSA and the SOW by failing to deliver the deliverables in a timely fashion in accordance with the express terms of those agreements.  Plaintiff is also barred from recovery under the doctrine of unclean hands because plaintiff deliberately failed to complete the remaining work required under the contract and instead chose to wait until after the relevant knowledgeable persons were terminated (following the sale of Thomson Learning) in the hopes that there would be no persons from Cengage to refute the baseless claims in the Complaint.

## FIFTH AFFIRMATIVE DEFENSE

30.     Plaintiff has waived its right to recover the monies it seeks in its complaint because it refused to complete the work required to recover the total fixed price under the contract in December 2007 when Cengage offered to provide a change order extending the deadlines in the SOW.

## SIXTH AFFIRMATIVE DEFENSE

31.     Plaintiff is obligated to indemnify Cengage under the express terms of the MSA for its expenses, including attorney's fees incurred in connection with defending this action and pursuing its counterclaims.  Indeed, under the MSA and SOW, plaintiff failed to provide the deliverables in accordance with the schedule set forth in the SOW and plaintiff has, therefore, materially breached the MSA.

## SEVENTH AFFIRMATIVE DEFENSE

734938_1

32. Under the MSA and SOW Cengage had a right to set off "any loss, damage, liability or claim which it may have against Consultant against the payment owing to Consultant under (i) the applicable Statement of Work, (ii) any other Statement of Work between Consultant and TL, and (iii) any other separate contracts(s) between Consultant and TL." By failing to provide the deliverables in timely fashion, NIIT materially breached the MSA and Cengage is entitled to set off any amount payable, including but not limited to NIIT's purported payment for a server license in the amount of $27,000.

Prayer for Relief

**WHEREFORE** defendant prays for a judgment as follows:

1. That Plaintiff take nothing by way of its Complaint;

2. For attorneys' fees, court costs, investigative costs and other expenses incurred in the defense of the action according to proof; and

3. For such other and further relief as the court may deem just and proper.

## COUNTERCLAIMS

### Jurisdiction and Venue

1. This Court has subject matter jurisdiction over Cengage's counterclaims pursuant to 28 U.S.C. § 1332(a)(1) because plaintiff and Cengage are citizens of different states and Cengage is seeking at least $75,000 in damages for plaintiff's breach of contract and for indemnification based on plaintiff's material breach of the MSA.

2. Venue is proper in this Court, pursuant to the contract between the parties that is at issue in this action, which provides that the state and federal courts of New York County, New York shall be the exclusive forum for any dispute arising thereunder.

### Facts

734938_1

3.   As set forth <u>supra</u>, the parties entered into the MSA in or around March 23, 2006.  The MSA expressly provided that <u>time was of the essence</u> for plaintiff's performance and plaintiff's failure to timely provide the deliverables would be a material breach of the MSA.

4.   Specifically, the MSA provides:

(a)   To the extent that the Services include the creation of any Work Product, Consultant shall create, develop and deliver to TL the deliverables as set forth in the applicable Statement of Work (the "Deliverables"), on or before the dates specified therein and in the format specified therein. The Deliverables shall conform to the specifications set forth in the Statement of Work and shall be acceptable to TL (acting in its sole discretion) in form and content.  <u>The parties agree that time is of the essence</u>.  <u>Any failure to meet the schedule set forth in the applicable Statement of Work shall constitute a material breach of this Agreement</u>. For the avoidance of doubt, the term Deliverables includes the Work Product and the Consultant Materials as defined herein.

5.   In addition, the MSA expressly provides that Cengage had the right to set off "any loss, damage, liability or claim which it may have against Consultant against the payment owing to Consultant under (i) the applicable Statement of Work, (ii) any other Statement of Work between Consultant and TL, and (iii) any other separate contracts(s) between Consultant and TL."

6.   The MSA also contains an indemnification provision that obligates plaintiff to indemnify Cengage for, <u>inter alia</u>, any losses, damages, judgments, and expenses, including attorney's fees arising out of or related to plaintiff's breach of the MSA.

7.   Specifically, the MSA provides:

6. **INDEMNIFICATIONS; LIMIT OF LIABILITY:**

(a) Consultant, at its own expense, will defend, indemnify and hold TL and its subsidiaries and affiliates harmless from and against any and all claims, actions, demands, liabilities, losses, damages,

8

judgments, settlements, costs and expenses (including reasonable attorneys' fees) (any or all of the foregoing hereinafter referred to as "Losses") insofar as such Losses (or actions in respect thereof) are based on, arise out of, or are related to (i) a breach by Consultant of any representation, warranty, covenant or agreement made by it hereunder or (ii) the gross negligence or willful misconduct of Consultant.  In addition to other remedies available to TL and its subsidiaries and affiliates, TL may charge the amount of any such Losses against any sums owed to Consultant under this Agreement.

8.  Further, the SOW entered in or around July 2006, which is incorporated into the MSA, provided a schedule of deadlines for plaintiff's performance.

9.  The SOW provides that failure to meet any deadline for any deliverable entitled Cengage to recover for any amounts previously paid to plaintiff and to withhold any other amounts due.

10. Specifically, the SOW provides:

**3.  Acceptance of Deliverables**

All Deliverables will be reviewed for conformance to the requirements documentation by the TL team and are subject to Acceptance (as defined in, and in accordance with the terms of, the Master Services Agreement).  All Acceptance must be in writing, signed by the TL Technical Lead and QA Director.  <u>If NIIT fails to deliver according to the specifications and milestone dates set forth in this SOW, NIIT will refund any monies paid for said work.  If monies have not been paid, TL is not obligated to pay NIIT for those milestones that NIIT fails to deliver and TL Accept.  If NIIT fails to deliver by the July 31, 2006 deadline for code complete and the October 6th deadline for Acceptance testing, NIIT may at NETg's sole discretion be penalized up to 10% of the total fees for the project</u>.  NIIT further warrants that the Deliverables shall function in accordance with the their specifications for not less than twelve months following release by NETg of such deliverable and NIIT further covenants to repair or replace at no additional charge any Deliverable that fails to function in accordance with its specifications for at least such twelve month period.

734938_1

11. Plaintiff failed to meet all of the deadlines provided in the SOW.

12. In or around November 2007, Cengage paid plaintiff approximately $470,000 for deliverables that were accepted, but were not timely.

13. Thereafter, plaintiff continued to fail to meet deadlines set forth in the SOW.

### FIRST CAUSE OF ACTION
### BREACH OF CONTRACT

14. Cengage repeats and realleges each and every allegation contained in paragraphs 1 through 13, inclusive, of the Counterclaims with the same force and effect as if fully set forth herein.

15. In or around March 2006, Cengage and NIIT entered into the MSA, which is a valid and binding contract concerning deliverables that NIIT was to provide in accordance with the SOW.

16. Specifically, in connection with the MSA and SOW, NIIT was to provide certain deliverables on a set schedule and in return was to receive a maximum amount of approximately $735,000 pending delivery of the deliverables in a timely fashion.

17. As set forth above, the MSA expressly provided that time was of the essence for receipt of the deliverables and NIIT's failure timely to provide deliverables would be a material breach of the MSA.

18. Furthermore, the SOW expressly provided that NIIT's failure to timely provide the deliverables in accordance with the milestones set forth in the SOW would entitle Cengage to withhold any payments and recoup any other payments previously made.

19. Cengage has paid NIIT approximately $470,000 for deliverables that were untimely.

20. NIIT also failed to provide the remaining deliverables (those for which it seeks payment in its Complaint) in accordance with the milestones set forth in the SOW.

21. Accordingly, under the express terms of the MSA, NIIT was in material breach of the MSA and SOW and, under the SOW, Cengage is entitled to recoup the amounts previously paid, i.e. $470,000.

22. This breach has been the legal and proximate cause of actual damages to Cengage in the amount of $470,000.

## SECOND CAUSE OF ACTION
## INDEMNIFICATION

23. Cengage repeats and realleges each and every allegation contained in paragraphs 1 through 22, inclusive, of the Counterclaims with the same force and effect as if fully set forth herein.

24. As set forth in ¶¶ 7-15 supra, NIIT has materially breached the MSA by failing timely to provide the deliverables in accordance with the schedule set forth in the SOW.

25. Under the MSA, NIIT agreed to indemnify and hold Cengage and its subsidiaries and affiliates harmless from and against any and losses and expenses, including attorneys' fees based on, arising out of, or related to a breach by NIIT of the MSA.

26. As a direct and proximate result of NIIT's breach of the MSA, Cengage has and is incurring expenses defending this litigation and in pursuing its contractual right to recoup the $470,000 payment described supra. Accordingly, Cengage seeks indemnification from NIIT in an amount to be determined at the time of trial, including, but not limited to, expenses, attorneys' fees and costs, and other foreseeable economic losses, all in a sum to be shown by proof at trial..

WHEREFORE, Cengage prays for judgment against Defendants as follows:

<u>ON THE FIRST CAUSE OF ACTION</u>

i) For actual damages in an amount to be determined at the time of trial against Defendants, but in no event less than $470,000 plus interest;

ii) For consequential damages against Defendants according to proof at trial, plus interest and attorney's fees;

iii) For such other further and different relief as this Court deems just and proper.

<u>ON THE SECOND CAUSE OF ACTION</u>

(i) For actual damages in an amount to be determined at the time of trial plus interest;

(ii) For consequential damages against Defendants according to proof at trial, plus interest, attorney's fees, and any other expenses;

(iii) For such other further and different relief as this Court deems just and proper.

Dated: May 28, 2008

                            SATTERLEE STEPHENS BURKE
                                & BURKE LLP

                      By: /s/ _____
                              James F. Rittinger (JR 0556)
                              Justin E. Klein (JK 8865)
                              230 Park Avenue
                              New York, New York 10169
                              (212) 818-9200 (Phone)
                              (212) 818-9606 (Fax)
                              Attorneys for Defendant

734938_1